**The below described is SIGNED.**

**Dated: March 22, 2006**   _____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH
### IN THE CENTRAL DIVISION

| | |
|---|---|
| In re: | |
| **Paul F. Jass and Wendy E Jass,** | Bankruptcy Number 05-80088 |
| Debtors. | Chapter 13 |

### MEMORANDUM OPINION

The matter before the Court is the Jasses' request for confirmation of their proposed chapter 13 plan.  Specifically, the Court is called upon to determine whether the Jasses' "disposable income" as determined by their Statement of Current Monthly Income (Form B22C) is the same as "projected disposable income" as used in 11 U.S.C. § 1325(b)(1)(B).[1]  The Jasses contend that they should only be required to pay their unsecured creditors their "projected disposable income," while the chapter 13 Trustee argues that they must pay the "disposable income" as calculated under Form B22C.  This matter presents an issue of first impression in light of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  The Court elects to issue this Memorandum Opinion which will constitute the Court's findings of fact

---

[1]Statutory references herein are to the Bankruptcy Code, unless stated otherwise.

1

and conclusions of law for purposes of Bankruptcy Rule 7052. The Court determines that "disposable income" as calculated by Form B22C is not the same as "projected disposable income."

## I. FACTUAL BACKGROUND

The Jasses filed for chapter 13 bankruptcy relief on November 14, 2005. They timely filed a Statement of Current Monthly Income, otherwise known as Form B22C, as required by several provisions of the Bankruptcy Code. Their Form B22C indicates that their yearly household aggregate income was $143,403.96 based on income they received during the six-month period before filing.[2] After deducting allowed expenses and deductions from their income, the Jasses' Statement of Current Monthly Income (Form B22C) shows a "disposable income" of $3,625.63 per month.

On January 31, 2006, the Jasses filed with the Court an amended chapter 13 plan which proposed to return $790.00 to unsecured creditors. The Court held a hearing on confirmation of the proposed plan on February 9, 2006. At the hearing, the Chapter 13 Trustee assigned to this case objected to confirmation. The Trustee noted that whereas the Jasses' "disposable income," as calculated on their Form B22C, is $3,625.63, they proposed to pay only $790.00 to unsecured creditors. The Trustee argued that by the terms of § 1325(b)(1)(B), a plan may not be confirmed where the Trustee objects to confirmation unless the plan provides that the debtor's "disposable income" is paid to unsecured creditors. The Trustee also noted that the term "disposable income" is defined by §§ 1325(b)(2) and 101(10A) to mean the number resulting from Form B22C. The Trustee argued that because the Jasses were not proposing to pay $3,625.63 to

---

[2]See § 101(10A)(A).

unsecured creditors, their plan did not comply with this "disposable income test." The Court continued the hearing to address the Trustee's Objection.

The Jasses argued that although § 1325(b)(2) defines "disposable income," they are required by § 1325(b)(1)(B) to provide "*projected* disposable income" to unsecured creditors. They argued that the word "projected" modifies the definition of "disposable income," and suggested that where a debtor can show that Form B22C, based on income received six months prior to filing, is not indicative of the debtor's future or "projected" income, then the debtor need not pay to unsecured creditors an amount commensurate with Form B22C. Mrs. Jass testified that beginning in December, 2005 her husband experienced serious medical problems involving injuries to his intestines. She testified that in connection with this condition, her family incurred $12,000 in medical expenses. In light of these expenses, the Jasses argued that their income in the future will not be commensurate with the "disposable income" shown on their Statement of Current Monthly Income (Form B22C). They argued that the changes under the BAPCPA do not require them to pay unsecured creditors the amount resulting from their Form B22C, so long as they can show that the income and expenses reported on the Form are inadequate representations of their future budget.

**II.   JURISDICTION AND VENUE**

The Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408(1).

**III.  ANALYSIS**

Section 1325(b)(1) provides that if the Chapter 13 Trustee or an unsecured creditor objects to confirmation of a debtor's proposed chapter 13 plan, the Court may only confirm the

3

plan if it proposes to pay the full amount of the creditor's claim or "provides that all of the debtor's *projected disposable income. . .* will be applied to make payments to unsecured creditors under the plan." (emphasis added).   Section 1325(b)(2) defines "disposable income" as "current monthly income received by the debtor" less specific expenses detailed in Form B22C. "Current monthly income" is defined in § 101(10A) as the debtor's income for the six-month period preceding bankruptcy.  The Jasses argue that the word "projected" modifies the definition of "disposable income," allowing them to disregard their "current monthly income" if that amount would not result in a *projected* income.

In interpreting a new statute, the Court must begin with the language of the statute itself, asking whether the language of the statute is plain.[3]  If so, the Court should generally enforce that language, giving each word its common usage.[4]  The Court's inquiry should end with the language of a statute unless 1) a literal application of the statutory language would be at odds with the manifest intent of the legislature;[5] 2) a literal application of the statutory language would produce an absurd result;[6] or 3) the statutory language is ambiguous.[7]

---

[3] United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (citation omitted)).

[4] Id.; see also Pioneer Investment Svcs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 388 (1993) (looking to the clear meaning of the word 'neglect' by citing its dictionary definition); Clinton v. City of New York, 524 U.S. 417, 454 (1998) (Scalia, J., dissenting) ("Congress speaks English like the rest of us.").

[5] Ron Pair, 489 U.S. at 242.

[6] Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982).

[7] Lamie v. United States Trustee, 540 U.S. 526, 536 (2004).

A.     **Clear Meaning of the Code**

In looking to the language of a statute, the Court must consider two important assumptions. First, the Court must give meaning and import to every word in a statute.[8] Second, the Court must presume that "Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another."[9]

The Court believes that the language of § 1325(b)(1)(B) is clear and unambiguous - section 1325(b)(1)(B)'s requirement that a plan propose to pay "projected disposable income" means that the number resulting from Form B22C is a starting point for the Court's inquiry only. Section 1325(b)(2) defines "disposable income" but § 1325(b)(1)(B) requires that a debtor propose a plan paying "*projected* disposable income." (emphasis added). The Court must give meaning to the word "projected," as it obviously has independent significance. The word "projected" means "[t]o calculate, estimate, or predict (something in the future), based on present data or trends."[10] Thus, the word "projected" is future-oriented. By definition under § 1325(b)(2), the term "disposable income" is oriented in historical numbers. By placing the word "projected" next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of "disposable income." The significance of the word "projected" is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B).

---

[8]Negonsott v. Samuels, 507 U.S. 99, 106 (1993).

[9]BFP v. Resolution Trust Corp., 511 U.S. 531, 537 (1994).

[10]The Am. Heritage College Dictionary 1115 (4th ed. 2002).

To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word "projected" and give meaning only to the term "disposable income." The only way for the word "projected" to have independent significance is if the word modifies the term "disposable income."

This interpretation is confirmed by the Court's requisite assumption that Congress intended to include the word "projected" in § 1325(b)(1)(B), even though that word was omitted in § 1325(b)(2).

Thus, the Court concludes that the plain meaning of § 1325(b) is dispositive of this issue. Under the clear meaning of the statute, a debtor must propose to pay unsecured creditors the number resulting from Form B22C, unless the debtor can show that this number does not adequately represent the debtor's budget projected into the future.[11]

**B.     Other Considerations for Statutory Interpretation**

Even assuming that the language of § 1325(b) does not end the Court's inquiry, the Court determines that other considerations underlying statutory interpretation confirm the Court's conclusion. As stated above, the Court's statutory interpretation analysis should consider evidence other than statutory language only in limited circumstances. Where the Court finds one of these situations, it must consider other methods for construing the terms of a statute, such as a clear manifestation of Congressional intent,[12] the policy underlying the statute and the likely

---

[11] See In re Hardacre, 2006 WL 541028 (Bankr. N.D. Tex. March 6, 2006) (stating in dictum that the word "projected" modifies the term "disposable income" and explaining that the definition of "current monthly income" is still important to define the sources of revenue which constitute income).

[12] Ron Pair, 489 U.S. at 245.

impact of a contrary result,[13] and a preference against surplusage.[14] Even if the Court were to consider these other methods for statutory construction, the Court would not alter its holding.

    1.    <u>No Clear Manifestation of Congressional Intent Suggests that the Court's Holding is Incorrect</u>

Generally, a court considering Congressional intent should look first to the Congressional record.[15] Where this is not helpful, a court may also consider relevant legal practice in place before recent changes to the statute at hand.[16] In cases involving changes under the BAPCPA, the Congressional record is largely silent because the only records available are little more than "a gloss of the statutory language of BAPCPA."[17] Thus, the Court's only measure for determining whether its holding is contrary to Congressional intent is pre-BAPCPA practice.

If anything, pre-BAPCPA construction of § 1326(b) supports the Court's holding. Sections 1325(b)(1)(B) and 1325(b)(2) are not new to the Bankruptcy Code, nor is the term "projected disposable income" as used in § 1325(b)(1)(B) or the term "disposable income" as used in § 1325(b)(2). The changes under the BAPCPA merely served to change the definition of "disposable income." Pre-BAPCPA cases interpreting the dichotomy between "projected disposable income" and "disposable income" held as the Court does today - that the definition of "disposable income" under § 1325(b)(2) was merely a starting point for the Court's inquiry into

---

[13]<u>Griffin</u>, 458 U.S. at 575.

[14]<u>Lamie</u>, 540 U.S. at 536.

[15]See <u>Lamie</u>, 540 U.S. at 539.

[16]<u>Ron Pair</u>, 489 U.S. at 245; <u>Lamie</u>, 540 U.S. at 539.

[17]<u>In re McNabb</u>, 326 B.R. 785, 789 (Bankr. D. Ariz. 2005).

whether the debtor was proposing to pay "projected disposable income."[18]

Against this backdrop, Congress amended § 1325(b). Congress changed the definition of "disposable income" under § 1325(b)(2), replacing it with a specific and detailed definition. Despite these detailed changes, Congress did not remove the word "projected" from § 1325(b)(1)(B), nor did it add the word "projected" to the term "disposable income," carefully defined by § 1325(b)(2). The Court can only conclude that the available evidence of Congressional intent underlying § 1325(b) bolsters its holding that the number resulting from Form B22C is not always a debtor's "projected disposable income."[19]

    2.    <u>The Policy Underlying the Bankruptcy Code would not be Better Served by a Contrary Holding</u>

The overarching policy of the Bankruptcy Code is to afford a debtor a "fresh start."[20] Although the changes to the Code under the BAPCPA serve to benefit creditors,[21] the changes are not so broad as to undermine the "fresh start" policy of the Code.

The Court determines that its conclusion in this case does not offend the policies underlying the Bankruptcy Code. Quite the contrary, if the Court were to reach a *different* result and hold that a debtor must always pay unsecured creditors the number resulting from Form B22C, the Court would offend the "fresh start" policies of the Code. If § 1325(b)(1)(B) required a debtor to always pay the calculated disposable income amount resulting from Form B22C, the

---

[18]See, e.g. <u>In re Anderson</u>, 21 F.3d 355, 357 (9th Cir. 1994) (declining to even consider the legislative history underlying § 1325(b) because the Court found that the "language of the statute is clear").

[19]See <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 221 (1998) ("We. . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." (citation omitted)).

[20]<u>In re Kallstrom</u>, 298 B.R. 753, 758 (10th Cir. BAP 2003).

[21]See <u>In re Collins</u>, 334 B.R. 655, 658 (Bankr. D. Minn. 2005) ("Clearly the Act's largess under these provisions inures to creditors.").

Court would essentially foreclose the potential for bankruptcy relief from a group of chapter 13 debtors who are otherwise eligible for relief.

The facts of this case serve as a good example. The Jasses argue that they have recently experienced a change in circumstances, such that their future income will not be commensurate with the income they received six months before filing. If the Court were to require the Jasses to pay the disposable income amount resulting from Form B22C, any plan they propose would not be feasible.[22] Because people are frequently forced to file for bankruptcy relief as a result of sudden life-altering events, the Jasses are exemplary of numerous debtors who would be foreclosed from seeking bankruptcy protections. This result is clearly at odds with the overarching policy that debtors who are eligible for bankruptcy relief be afforded an opportunity for a "fresh start."

Thus, the Court concludes that the policy underlying the Bankruptcy Code further supports the Court's interpretation of § 1325(b). To interpret the statute differently would reach an absurd result which itself would offend the policy of the Bankruptcy Code.[23]

3.  The Court's holding is Consistent with the Judicial Preference Against Surplusage

A Court interpreting a statute should avoid surplusage constructions if possible.[24] The Court's holding does not create any surplusage in the terms of § 1325(b)(1)(B). To the contrary, were the Court to hold that § 1325(b)(1)(B)'s reference to "projected disposable income" requires a debtor to always pay the number resulting from Form B22C, it would be *creating*

---

[22] Accord In re Hardacre, 2006 WL 541028 at *6 (Bankr. N.D. Tex. March 6, 2006).

[23] See Ron Pair, 489 U.S. at 242.

[24] Lamie, 540 U.S. at 536.

9

surplusage - the term "projected" would have no effect.

The judicial bias against surplusage further convinces the Court that its conclusion is the better reading of § 1325(b). Only by determining that Form B22C is *not* dispositive of a debtor's projected disposable income can the court avoid creating surplusage in the terms of § 1325(b).

### C.      Resulting Interpretation

The Court concludes that the word "projected" modifies the defined term "disposable income" as it is used in § 1325(b)(1)(B). Form B22C will always be the starting point for the Court's inquiry into whether the debtor is complying with the "projected disposable income" requirement of § 1325(b)(1)(B). The Court will presume that the number resulting from Form B22C is the debtor's "projected disposable income" unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future.

The Court notes that the BAPCPA amended the Code to allow a debtor to proceed in a manner conflicting with the debtor's Form B22C. Section 707(b)(2)(B) was added to the Code to allow a debtor to rebut a presumption of abuse in filing a chapter 7 petition where the debtor can demonstrate "special circumstances." Under this provision, a debtor attempting to show "special circumstances" must itemize each additional expense or change in income made to Form B22C and provide 1) documentation for the expense or adjustment and 2) a detailed explanation of the special circumstances which justify the changes. The inquiry under § 707(b)(2)(B) into whether "special circumstances" exist in a debtor's case is similar to the Court's inquiry into whether a substantial change in circumstances exists. Thus, the Court will look to the analysis required by § 707(b)(2)(B) for guidance in determining whether a debtor has

met his or her burden to show a substantial change in circumstances. A debtor attempting to meet this burden should present documentation similar to that required by § 707(b)(2)(B).

If the Court finds adequate evidence to rebut the presumption in favor of Form B22C, the Court will allow the debtor to use a projected budget in the form of Schedules I and J to determine the debtor's "projected disposable income." For purposes of § 1325(b)(1)(B), the Court will then require the debtor to propose a plan to return to unsecured creditors an amount consistent with those schedules.

It is most likely that only in rare instances will the Court consider confirming chapter 13 plans where the "projected disposable income" does not conform with the calculations on Form B22C. As a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C.

**IV.    APPLICATION OF § 1325(b)(1)(B) TO THE JASSES**

The Statement of Current Monthly Income filed by the Jasses would require them to propose a plan paying unsecured creditors $3,625.63 per month. The Court presumes that this number is the "projected disposable income" required in the Jasses' case unless they can present evidence to show a substantial change in circumstances. At the hearing on confirmation of the Jasses' proposed chapter 13 plan, Mrs. Jass testified that her husband had recently been hospitalized and incurred substantial medical bills in connection with complications involving his intestines. Mrs. Jass did not testify as to how these injuries will affect her projected income or expenses. To rebut the presumption that "projected disposable income" is the number resulting from Form B22C, the Jasses must present specific evidence as to how the numbers reflected on Form B22C are inadequate projections of their future finances. Because the Jasses

have not yet presented evidence addressing the inadequacy of figures contained in their Statement of Current Monthly Income, the Court finds that the Jasses have not carried their burden to rebut the presumption that their "projected disposable income" is the number resulting from Form B22C. The Court may reevaluate this determination if the Jasses present additional evidence at the continued hearing on this matter.

**V.    CONCLUSION**

"Disposable income," as it is defined by § 1325(b)(2), is not always a debtor's "projected disposable income" for purposes of § 1325(b)(1)(B). The hearing on confirmation of the Jasses' proposed chapter 13 plan is CONTINUED to address remaining issues in the Jasses' case.

_____End of Document_____



Service of the foregoing **MEMORANDUM OPINION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Kevin Anderson
Office Chapter 13 Trustee
405 South Main Street, Suite 600
Salt Lake City, UT 84111

Paul Jass
Wendy Jass
7548 South 1655 West
West Jordan, UT 84084

David Berry
Berry & Tripp
5296 South Commerce Drive, Suite 200
Salt Lake City, UT 84107-5337